[No. 65667-8-I.   Division One.   August 29, 2011.]

OLYMPIC TUG & BARGE, INC., *Respondent*, v. THE DEPARTMENT OF REVENUE, *Appellant*.

*Robert M. McKenna, Attorney General, David M. Hankins, Senior Counsel,* and *Brett S. Durbin, Assistant,* for appellant.

*John R. McDowall, Kevin M. Sullivan, George C. Mastrodonato,* and *Michael B. King* (of *Carney Badley Spellman PS*), for respondent.

¶1 APPELWICK, J. — The Department appeals the superior court's order reversing the Board's order in favor of the Department. The Department contends that Olympic, a bunkering service provider, is not entitled to a public utility tax deduction under former RCW 82.16.050(8) (2000). Because the bunker fuel was not a commodity being forwarded to an interstate or foreign destination, Olympic was not entitled to the deduction. We reverse the superior court and affirm the Board.

## FACTS

¶2 Olympic Tug & Barge Inc. operates a tugboat business and provides "bunkering services," which means it transports barges containing bunker fuel from oil refineries to ocean-going vessels anchored in the Puget Sound and pumps the fuel into the vessels' fuel hold (called a "bunker"). In an earlier audit, Olympic contended that the revenue from bunkering services was deductible for the purpose of calculating the public utility tax (PUT) under chapter 82.16 RCW. The Department of Revenue (Depart-

ment) denied the deduction. Olympic filed an informal appeal, and the Board of Tax Appeals (Board) permitted the PUT deduction. The Department then issued an excise tax advisory stating that it would not follow the Board's informal decision. Wash. Dep't of Revenue, Excise Tax Advisory (ETA) 2009-1S.32 (Oct. 18, 2004), reissued as ETA 3055.2009, at 2 (Feb. 2, 2009).

¶3 Olympic sought the same deduction from an assessment based on its 2002 service revenue, audit period January 1, 2002 to December 31, 2002. The Department again denied the deduction. Olympic again appealed to the Board, this time requesting the formal procedure. The Board then held that Olympic was not entitled to the deduction. Olympic appealed under the Administrative Procedure Act (APA), chapter 34.05 RCW, and the superior court reversed. The Department appeals.

## DISCUSSION

### I. Collateral Estoppel

¶4 Olympic first contends that the Department is prevented from raising this issue by principles of collateral estoppel, because the Board already considered and rejected the Department's argument in the previous appeal, decided in 2001. Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004) (citing 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.32, at 475 (1st ed. 2003)). The collateral estoppel doctrine promotes judicial economy and serves to prevent inconvenience or harassment of parties.[1] *Id.* Col-

---

[1] For collateral estoppel to apply, the party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against

lateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding. *Id.* at 307. Further, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.* The Department contests only whether the parties had the opportunity to appeal and whether the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding.

¶5 The Department first argues that it did not receive a full and fair opportunity to litigate the issue because it did not have the opportunity to appeal the informal decision by the Board in 2001.[2] A party may not be denied the chance to litigate an issue if it was statutorily denied an opportunity to appeal. *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 309, 57 P.3d 300 (2002) (citing Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805, 827 (1985); RESTATEMENT (SECOND) OF JUDGMENTS § 28(1) & cmt. a (1982)). Here, the Department was not entitled to appeal from the informal decision of the Board, because decisions entered in an informal appeal are not subject to judicial review. WAC 456-10-010(1)(b).

---

whom it is applied. *Christensen*, 152 Wn.2d at 307. Three additional factors must be considered under Washington law before collateral estoppel may be applied to agency findings: (1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations. *Id.* at 308.

[2] When a taxpayer seeks to appeal a decision by the Department, the taxpayer may elect either a formal or an informal hearing. WAC 456-10-010(1). The Department may convert the hearing to a formal hearing. WAC 456-10-010(2)(b), (c). Informal hearings are conducted in accordance with the rules of practice and procedure set forth in this chapter. WAC 456-10-010(1). Formal hearings are conducted in accordance with the APA, chapter 34.05 RCW, and the rules of practice and procedure of chapter 456-09 WAC. WAC 456-10-010(1). A formal decision of the board is subject to judicial review in accordance with RCW 34.05.570. WAC 456-10-010(1)(a). But, taxpayers may get relief from an informal board decision by filing a de novo refund action under RCW 82.32.180. This provides taxpayers an opportunity to obtain relief. *See Pettit v. Bd. of Tax Appeals*, 85 Wn.2d 646, 649-50, 538 P.2d 501 (1975); *King County v. Wash. State Bd. of Tax Appeals*, 28 Wn. App. 230, 234, 622 P.2d 898 (1981).

¶6 Olympic does not contend that the Department had the right to appeal the first decision. Instead, Olympic argues that the Department had the opportunity to convert the board review into a formal hearing and obtain review under the APA, and therefore collateral estoppel may be applied to the informal decision, rendering it a final decision on the merits. We disagree. The opportunity to preemptively select a different procedure, one that included judicial review, does not satisfy *Restatement* section 28(1) as necessary to apply to collateral estoppel. It is not equivalent to providing the opportunity to seek the correction of errors in the process actually used.

¶7 Olympic argues that refusing to apply collateral estoppel to an informal proceeding allows the Department to relitigate the issue year after year. But, the taxpayer need only elect a formal appeal process or file a refund action in order to obtain a binding result. Also, if collateral estoppel did apply to an informal decision, the Department would need to convert every hearing to a formal hearing to preserve its ability to fully litigate the issue, increasing the time, judicial resources, and agency resources expended, as well as the cost to the taxpayer. Therefore, judicial economy is served by encouraging the use of an informal procedure where appropriate.

¶8 Olympic argues that collateral estoppel must be applied to a decision made in an informal appeal to prevent the Department from "nonacquiescing" to a decision, that is, not following it in subsequent cases. But, whether the Department acquiesces to the Board's decision is not relevant here. The legal question of whether collateral estoppel requires a different result in no way hinges on the practice of the Department.

¶9 The Department did not have the right to appeal the Board's 2001 decision. The issue was not fully and fairly litigated. Collateral estoppel is inappropriate to prevent the current litigation, and Olympic fails to show that the Board's decision was clearly erroneous on these grounds.

Therefore, we proceed to evaluate the merits of the Department's appeal.

II. <u>PUT Deduction</u>

¶10 Olympic seeks a deduction from the PUT under former RCW 82.16.050(8).[3] Washington's PUT is a tax on gross income, subject to limited deductions and exemptions. *See* former RCW 82.16.020 (1996); former RCW 82.16.050. The second clause of former RCW 82.16.050(8) provided a deduction for:

> amounts derived from the transportation of commodities from points of origin in the state to an export elevator, wharf, dock or ship side on tidewater or navigable tributaries thereto from which such commodities are forwarded, without intervening transportation, by vessel, in their original form, to interstate or foreign destinations.

The statute did not provide definitions of the terms used.

¶11 The Board concluded, among other reasons, that Olympic was not entitled to the deduction because the legislature did not intend that the term "commodity" include tangible personal property that is delivered on board a ship to be consumed in the course of forwarding other commodities in interstate and foreign commerce. Appellate

---

[3] We look to the law in effect during 2002, the tax year at issue in this case. Former RCW 82.16.050(8) provided a deduction for:

> [a]mounts derived from the transportation of commodities from points of origin in this state to final destination outside this state, or from points of origin outside this state to final destination in this state, with respect to which the carrier grants to the shipper the privilege of stopping the shipment in transit at some point in this state for the purpose of storing, manufacturing, milling, or other processing, and thereafter forwards the same commodity, or its equivalent, in the same or converted form, under a through freight rate from point of origin to final destination; and amounts derived from the transportation of commodities from points of origin in the state to an export elevator, wharf, dock or ship side on tidewater or navigable tributaries thereto from which such commodities are forwarded, without intervening transportation, by vessel, in their original form, to interstate or foreign destinations: PROVIDED, That no deduction will be allowed when the point of origin and the point of delivery to such an export elevator, wharf, dock, or ship side are located within the corporate limits of the same city or town.

review is of the Board's decision, not the decision of the superior court, and judicial review of the Board's decision is limited to the record before the Board. *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994). The appealing party bears the burden of demonstrating the invalidity of the Board's actions. *Pres. Our Islands v. Shorelines Hearings Bd.*, 133 Wn. App. 503, 515, 137 P.3d 31 (2006).

¶12 The APA governs this court's review of the Board's decision. *Stuewe v. Dep't of Revenue*, 98 Wn. App. 947, 949, 991 P.2d 634 (2000). A party wishing to appeal an order from the Board may do so on the basis of nine different grounds under RCW 34.05.570(3), including subsection (d), erroneous interpretation or application of the law. Under the "clearly erroneous" standard, the Board's decision may be reversed when the reviewing court is definitely and firmly convinced that a mistake has been made. *Id.*; *Harbor Air Serv., Inc. v. Bd. of Tax Appeals*, 88 Wn.2d 359, 366, 560 P.2d 1145 (1977).

¶13 Statutory interpretation questions are questions of law we review de novo. *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 919, 215 P.3d 185 (2009). When construing a statute, our objective is to ascertain and carry out the legislature's intent. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Statutory interpretation begins with the statute's plain meaning. *Id.* We discern the plain meaning from the ordinary meaning of the language at issue, the statute's context, related provisions, and the statutory scheme as a whole. *Id.* Even though we look to the broader statutory context, we do not add words where the legislature has not included them, and we construe statutes " 'such that all of the language is given effect.' " *Id.* (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). If we determine that the statute is unambiguous after reviewing its plain meaning, our inquiry ends. *Id.* Only if the statute is ambiguous do we consider the legislative history and circumstances sur-

rounding the statute to determine legislative intent. *Id.* at 527. Courts also avoid interpreting a statute in a way that leads to an absurd result because we presume the legislature did not intend an absurd result.[4] *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 620, 229 P.3d 774 (2010).

¶14 We construe tax exemptions and deductions narrowly. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 455, 210 P.3d 297 (2009). We may look to the dictionary definition of undefined terms when interpreting the meaning of a tax deduction statute. *Id.* at 451. But the burden is on the party asserting the deduction to show that it qualifies for the deduction. *Id.* at 455.

¶15 Former RCW 82.16.050(8) required that the "commodities are forwarded" to an interstate or foreign destination. A "commodity" is an "economic good" or "an article of commerce." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 458 (2002). *Webster's Third New International Dictionary* defines "commodity" as:

> **2 a :** an economic good; *esp[ecially]* : a product of agriculture, mining, or sometimes manufacture as distinguished from services . . . **b :** an article of commerce; *esp[ecially]* : one delivered to a transportation company for shipment.

*Id.*; *see also* BLACK'S LAW DICTIONARY 310 (9th ed. 2009) (defining "commodity" as "[a]n article of trade or commerce"). The verb "forward" means:

> **1 :** to help onward : ADVANCE, PROMOTE, HASTEN . . . **2 a :** to send forward : send toward the place of destination : TRANSMIT . . . **b**

---

[4] Whether an agency's construction of a statute is accorded deference depends on whether the statute is ambiguous. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994). Where an agency is charged with the administration and enforcement of a statute, we accord the agency's interpretation of an ambiguous statute great weight in determining legislative intent. *Id.* A statute is ambiguous if it has more than one reasonable interpretation. *McLane Co. v. Dep't of Revenue*, 105 Wn. App. 409, 413, 19 P.3d 1119 (2001). Because we do not find former RCW 82.16.050(8) to be ambiguous, we do not defer to the Department's interpretation of the term "commodity," although we ultimately find it to be correct.

: to send or ship onward from an intermediate post or station in transit (as from one carrier to another . . .).

WEBSTER'S, *supra,* at 896.

¶16 The parties do not dispute that the fuel was being delivered to the ship while the ship was in Washington waters and that Olympic never had ownership of the bunker fuel, but merely transported it from the refinery to a vessel at anchor. Additionally, the parties do not dispute that the ship took ownership of the bunker fuel for consumption, not accepting the bunker fuel as cargo to transport it to or for a third party.[5] Also, we accept for the purposes of this opinion Olympic's assertion that the vessel reached international waters before consuming the bunker fuel, although we recognize that this remains a factual question.[6]

¶17 Simply put, Olympic argues that the fuel it placed on the vessel in Washington waters was forwarded by the receiving vessel to itself once it reached international waters. Therefore, the bunker fuel was a commodity forwarded to an interstate or foreign destination as required by the statute. We reject Olympic's analysis.

¶18 The fuel, when offloaded by Olympic from the barge to a vessel, was at its final destination. It was on the vessel that would consume it. It was no longer a commodity being forwarded to another destination. It was at that point a consumable in possession of the end user, being used to

---

[5] Should a vessel decide to resell bunker fuel at the end of its route, if and whether that fuel is subject to taxation is not before us. It is unquestioned that the fuel was being delivered to the ship for consumption by that ship.

[6] The Department argues that even if this court agreed that fuel forwarded out of state and consumed after crossing state lines qualified for the deduction, Olympic failed to prove that the fuel actually left Washington waters as a matter of fact. We need not address this question as the deduction is not legally available even if Olympic proved the issue of fact.

transport cargo. It was no longer a commodity being forwarded to an interstate or foreign destination.[7]

¶19 Olympic cites two cases to prove that the fuel remained a commodity even though it was sold directly to a consumer and would ultimately be consumed by the purchaser. Both cases are inapposite. In *Tonasket v. State*, in considering whether Indian retailers were exempt from the collection of the state cigarette excise tax, the court explained that "[t]he principal retail *commodity* was cigarettes which were sold indiscriminately to Indians and non-Indians." 84 Wn.2d 164, 167, 525 P.2d 744 (1974) (emphasis added). This speaks only to whether the cigarettes were a commodity in the hands of the retailer for purposes of the retail sale. It says nothing about the nature of the cigarettes in the possession of the purchaser. In *Longview Fibre Co. v. Department of Revenue*, the Board considered whether certain wood chips would be subject to certain taxes, stating, "The hog fuel [a type of wood chip] is found to be a separate and distinct *commodity* from the wood chips and is, in fact, a byproduct of the manufacturing process, once the screening of the wood chips has been commenced." No. 12685, at 5, 9 (Wash. Bd. of Tax Appeals Dec. 30, 1975) (emphasis added). But, the Board discussed the "commodities" in the context of considering whether the hog fuel was a separate, salable commodity from other wood chips: for example, the Board reasoned that the hog fuel was a "salable commodity and would be taxed were it sold" by Longview Fibre. *Id.* at 7. Ultimately, the Board held the hog fuel manufactured by screening wood chips but used as

---

[7] The Department argues that *Shell Oil Co. v. California Board of Equalization*, 64 Cal. 2d 713, 414 P.2d 820, 51 Cal. Rptr. 524 (1966), a California case interpreting the federal import-export clause, U.S. Const. art. I, § 10, cl. 2, is useful here. In that case, the California Supreme Court held that bunker fuel was not an export under the import-export clause because it was never delivered to a foreign destination. *Shell Oil*, 64 Cal. 2d at 720. "Export" is defined as "to carry or send (a commodity) to some other country or place." Webster's, *supra*, at 802. The Department asserts that this is similar to former RCW 82.16.050(8)'s phrase "forwarded . . . by vessel . . . to interstate or foreign destinations." Our holding today is consistent with the California case.

fuel for the manufacturer would not be subject to the use tax applicable to a commodity type transfer. *Id.* Like the bunker fuel, the cigarettes and hog fuel would be commodities while passing from one party to another party. The cases say nothing about either in the hands of an end user. The statute here requires that the items delivered to the vessel remain commodities after delivery and that they be forwarded to an interstate or international destination. The bunker fuel did not remain a commodity after it had arrived at its final user, the vessel, which received it for consumption rather than forwarding.

¶20 Olympic next argues that if the legislature intended to exclude commodities that are also consumables, it would have said so. We disagree. It was not necessary for the legislature to specifically exempt commodities used by the vessel because the requirement that commodities be forwarded already precluded items consumed during transportation from being eligible for the deduction.

¶21 The plain language of the deduction is not ambiguous. Olympic does not qualify for the PUT deduction under former RCW 82.16.050(8). We need not address the Department's arguments that the bunker fuel was not delivered "ship side." Because the Board correctly interpreted the statute, the Board's decision was not clearly erroneous.

¶22 We reverse the superior court and affirm the Board.

LEACH, A.C.J., and GROSSE, J., concur.

Reconsideration denied October 10, 2011.