# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

RORY HIGHAM,

Appellant,

v.

PIERCE COUNTY acting through its
PLANNING & LAND SERVICES
DEPARTMENT, a municipal corporation,

Respondent.

No. 47836-6-II

UNPUBLISHED OPINION

SUTTON, J. — Rory Higham appeals the superior court's order which affirmed the Pierce County Hearing Examiner's denial of his application for a wetland buffer variance. We hold that the hearing examiner correctly interpreted and applied the variance criteria, the findings of fact are supported by substantial evidence, and the findings of fact support the conclusions of law. We affirm the hearing examiner's decision to deny the wetland buffer variance. We also affirm the superior court's order that the doctrine of collateral estoppel does not apply and award Pierce County its reasonable attorney fees and costs on appeal.

FACTS

## I. 2001 PROPERTY DEVELOPMENT

In 2000, Higham purchased 3.56 acres of land on Chesney Road East in Tacoma. There were wetlands on the property, including a natural pond. The original property had an existing 30-foot easement on the southeast side of the property, which connected the property to Chesney Road

East and provided driveway and utility access to the property. The property also contained a mobile home and two barns.

In 2001, Higham cleared and graded the site without first obtaining a permit from Pierce County in violation of the county's wetland regulations.[1,2] In the northeast portion of his property, Higham excavated an area adjacent to the pond.

## II. 2003 WETLAND BUFFER REDUCTION AGREEMENT

In 2003, Higham entered into a mitigation agreement (2003 Wetland Approval) to resolve his violation of the wetland regulations. The 2003 Wetland Approval permitted Higham to enhance the area around the pond with native trees and vegetation and to fence off the area so that the wetlands would not be disturbed. In return, the county agreed to reduce the wetland buffer for the pond from 50 feet to 37.5 feet. The 2003 Wetland Approval stated the following,

> These conditions apply to the on-site wetland and buffer. The wetland has been categorized as a Category III wetland. **A 37.5-foot wetland buffer is being allowed. This reduction has been allowed with the required restoration.**
>
> . . . .
>
> This wetland approval is being accepted for correction of the violation and top [sic] document existing structures and activities on site that were either approved or were pre-existing. **A new wetland review will be required for any change of use associated with any new proposed development activities or structures on the site.** If none of the correction/restoration activities occurs on the site in three years,

---

[1] Chapter 18E.30 Pierce County Code.

[2] In 2001, the on-site wetland was designated as a Category III wetland and required a 50-foot buffer. In 2011, the wetland was recategorized as a Category II wetland and required a 100-foot buffer. However, Pierce County concedes that the proposed use for this site based on development type is a "moderate intensity" use and that a reduced wetland buffer of 75-feet is permitted. *See* Suppl. Clerk's Papers 89 (former Pierce County Code 18E.20.060); Administrative Record (AR) at 40.

the wetland approval will expire and the parcel may again be subject to compliance/correction.

The issuance of this wetland approval does not constitute approval of other proposed projects by the landowner.

. . . .

WETLAND CONDITIONS:

1. The following activities are regulated within a wetland, stream, and/or their buffers unless exempted by Section 18E.20.030 or as allowed pursuant to an approved mitigation plan.

. . . .

e. Constructing, reconstructing, demolishing, or altering the size of any structure or infrastructure.

Administrative Record (AR) at 84-85.

### III. 2004 BOUNDARY LINE ADJUSTMENT

In September 2003, Higham acquired a 30-foot by 240-foot strip of property (pipe stem) adjacent to the southwest corner of his property. Pierce County[3] approved a boundary line adjustment in 2004 (2004 Boundary Line Adjustment) to add the 30-foot strip to Higham's existing parcel.

The 2004 Boundary Line Adjustment stated that the county's approval was "not a guarantee that future permits will be granted for any structure or development within [the] lot." AR at 88. The 2004 Boundary Line Adjustment survey map labeled the revised property line as a "driveway." AP at 89. Higham did not apply for the required permits or a wetland variance to develop a driveway. Higham then constructed a gravel driveway over the pipe stem portion of his

---

[3] The Pierce County Department of Planning and Land Services approved the boundary line adjustment. The hearing examiner found that the Resource Management Section did not review or approve boundary line adjustments at that time.

property and along the west side of his property for a total distance of 690 feet. The driveway was within the required 75-foot buffer of an off-site Category II wetland to the west of his property.

In June 2005, the county's health department approved a permit for Higham to construct an irrigation well on his property. The application for the well listed a proposed residence on the property.

IV. 2011 WETLAND VARIANCE APPLICATION

In 2010, Higham applied for a permit to construct a proposed single-family residence. In February 2011, he applied for a wetland variance (1) to approve the previously constructed pipe stem driveway within the required buffer of the off-site wetland to the west of his property and (2) to allow him to construct a new/additional single-family residence within the required 75-foot wetland buffer for the on-site wetland.

The on-site wetlands and the off-site wetlands were designated Category II wetlands, which required a buffer of 100 feet from the edge of the wetland. Pierce County Code (PCC) 18E.30.060 establishes wetland buffers depending on the wetland category. The proposed use for this Category II site was a "moderate intensity" use and a reduced buffer from the edge of each wetland of 75 feet was permissible. AR at 41. Higham applied for a variance to reduce the wetland buffer from 75 feet to 45 feet to accommodate a single-family residence and to reduce the wetland buffer from 75 feet to 15 feet to accommodate the pipe stem driveway.

Higham applied for a wetland variance under PCC 18E.20.060(D)(3), and stated in his application that the variance was for the

> development of a single-family homesite within the northwestern portion of the project site with associated septic drain field, garage, onsite well, and access driveway. The existing small home within the southeastern portion of the project

4

site shall be retained as an Accessory Dwelling Unit (ADU). This request shall require a reduction of standard wetland buffers for onsite and offsite wetland areas.

AR at 48.

Under PCC 18E.20.060(D)(3)(a), the hearing examiner had the authority to grant a variance if the following four criteria were met:

1. There are special circumstances applicable to the subject property or to the intended use such as shape, topography, location, or surroundings that do not apply generally to surrounding properties or that make it impossible to redesign the project to preclude the need for a variance;

2. The applicant has avoided impacts and provided mitigation to the maximum practical extent;

3. The buffer reduction proposed through the variance is limited to that necessary for the preservation and enjoyment of a substantial property right or use possessed by other similarly situated property, but which because of special circumstances is denied to the property in question; and

4. Granting the variance will not be materially detrimental to the public welfare or injurious to the property or improvement.

Suppl. Clerk's Papers at 90 (PCC 18E.20.060(D)(3)(a)(1-4)).

On May 4, 2011, the hearing examiner held a hearing on Higham's wetland variance application. The county biologist testified for the Department of Planning and Land Services based on the county's staff report, which findings, conclusions and recommendations the hearing examiner adopted.[4] The county biologist testified that Higham applied for a wetlands buffer variance for a proposed single-family residence and shop. The county biologist also testified that the site selected by Higham for the single-family residence and shop already contained a pre-

---

[4] The Pierce County Department of Planning and Land Services Staff Report's findings were fully incorporated into the hearing examiner's finding of fact 5, which states, "The Staff Report with its attachments adequately identifies the issues, sets out proposed findings, conclusions, and recommendations and is hereby incorporated by reference as though fully set forth." AR at 31.

existing mobile home, two sheds, and an unpermitted driveway in the southwest corner of the site. The county biologist described the 2003 Wetland Approval and testified that the approval had expired on June 10, 2006. The county biologist also testified about the 2004 Boundary Line Adjustment and Higham's construction of the pipe stem driveway.

The county biologist testified that the staff reported the following key findings:

8. The applicant proposes to permanently eliminate approximately 10,000 square feet of buffer, and reduce the buffer width to approximately 20 to 25 feet in two places between the driveway and the off-site wetland to the west, to about 15 feet between the driveway and the off-site wetland to the south, and to about 45 feet between the house and the on-site wetland.

. . . .

11. The applicant has not proposed any mitigation for any of the current or proposed impacts.

12. Approximately 1.3 acres of useable area is located outside of the wetland and buffer areas, prior to any buffer reduction. Some of the existing, legally established development on the site (the existing mobile home, driveway to the mobile, and two sheds west of the mobile) are located partially within the buffer areas of the off-site wetlands. The remaining area is large enough to accommodate the proposed house, driveway, and shop without additional buffer reduction.

AR at 42.

The county biologist testified that there were other alternatives to the proposed site for the single-family residence and shop because the project could be redesigned with no buffer reductions to avoid or minimize any impacts, but that Higham had not proposed any mitigation or addressed any impacts.

Higham's biologist disagreed that other alternatives existed and testified that

the only place – other than where the existing septic system is for the [accessory dwelling unit], that's approximately the only place on the site where that septic system is going to fit.

. . . .

As identified by the county, there's not going to be a direct impact to the wetlands or streams. We've avoided those impacts. We believe we've minimized those impacts by much of the prior work that was done in establishing wetland and buffer areas on-site, the very western portion of the site, the western property boundary, is going to be fenced. So that fence will isolate on-site activities from adjacent wetland areas to the west.

And so that we do not really expect this homesite to result in a negative impact to the functions of adjacent or on-site wetlands and adjacent wetlands and buffers.

. . . .

And again . . . we generally disagree with county staff on the location of the homesite. We believe the homesite is consistent with wise utilization of the property. Yes, we're going to encroach into buffers that are imposed onto the site. We have looked at alternatives of using the existing easement to access the homesite, but in doing that, we're also crossing through buffer. So using the existing driveway that was created within the [boundary line adjustment] seems to make more sense than creating additional roadway to connect the southeast corner to the southwestern corner to access the new homesite.

Verbatim Report of Proceedings of Hearing before Deputy Hearing Examiner (May 4, 2011) at 24-28 (VRP).

Higham's biologist testified that Higham wanted to locate his single-family residence on the northern portion of the property so that the residence could be constructed outside of the wetlands and buffers because "[t]he site has been and continues to be managed as livestock pasture. And we don't want to lose that use by the addition of a homesite on this property." VRP at 26. Higham also testified that he believed that the county's approval of the 2004 Boundary Line Adjustment meant that the county also had approved construction of the new pipe stem driveway.

On May 19, 2011, the hearing examiner entered the following relevant findings of fact:

6. [Higham] has a possessory interest in a [rectangular] shaped 3.56 acre site in a Mid County Community Plan area of Pierce County. Legal access to the site is provided via an easement from the southeast corner of the site southward to Chesney Road. Approximately 1.3 acres of the site is located outside of wetland and buffer areas. Currently there is a 924 square foot single-family mobile home

on site. There are also two sheds west of the mobile home and an unpermitted second access in the southwest corner of the site.

7. Sometime between 2003 and 2005 [Higham] constructed a second 690-foot long driveway from Chesney Road, through a pipe [stem] connection and all the way north along the west property line to an area where he proposes to construct a new single family home. Approximately 560 lineal feet of the second driveway is located within buffers of [off-site] wetlands. In addition, within the same time frame, [Higham] constructed a dock type structure over the onsite wetland and buffer area. No permits have been applied for or issued for either the driveway or the dock. In 2006 [Higham] commenced grading the site without a permit, a stop worker order was issued on January 26, 2006. Thereafter the applicant under took additional clearing and grading, although majority of additional work occurred outside of the wetland and buffer areas.

. . .

13. Pierce County Code 18E.20.060 contains the criteria governing variance requests to reduce wetland buffers below standards of PCC 18E.30.060. Pierce County Code 18E.20.060D3(a) provides that the hearing examiner shall have authority to grant a variance from the requirements of PCC 18E.30.060 and PCC 18E.40.060 when, in the opinion of the hearing examiner, all of the listed criteria are met. Findings with reference to each of the listed criteria are as follows:

1. There are no special circumstances applicable to this 3.5 acre parcel such as shape, topography, location of surroundings that make it impossible to redesign this project to preclude the need for a variance. In fact during the hearing, it was clearly demonstrated that proposed construction could take place without the need for a variance.

2. The applicant has not avoided impacts and provided mitigation to the maximum extent possible. In fact, he has proposed no mitigation and as previously stated the site contains sufficient area to build outside of the wetland and wetland buffer areas.

3. A Buffer reduction is not necessary for the applicant to construct a single family residence on this site.

4. Granting variances where the applicant fails to meet the strict application of the law undermines the regulatory purposes and principles of soning ordinances and the comprehensive plan. . . . The applicant has failed to demonstrate this request meets any criteria for the granting of a variance. The burden of proof is upon the applicant to demonstrate that they meet each of the criteria for a variance.

AR at 31-33 (some alteration in original, citation omitted). The hearing examiner then concluded that "[Higham's] request for a variance from the provisions of 18E.40.060 in order to construct a single-family residence within a wetland buffer area[] of a site located at 2501 Chesney Road East" is denied. AR at 34.

On June 1, 2011, Higham filed a request for reconsideration of the hearing examiner's decision, arguing that the county was collaterally estopped from modifying the previously reduced wetland buffer on his property. The hearing examiner denied Higham's request for reconsideration because it was untimely under PCC 1.22.130[5] and he no longer had jurisdiction.

V. APPEAL OF HEARING EXAMINER'S DECISION

On June 9, 2011, Higham appealed the hearing examiner's decision under the Land Use Petition Act (LUPA).[6] Higham argued that Pierce County was collaterally estopped from modifying the previously reduced wetland buffer and that the hearing examiner erred when he denied Higham's application for a wetland buffer variance. After a hearing, the superior court ruled that collateral estoppel did not apply, that Higham did not meet his burden of proof under RCW 36.70C.130(1), and affirmed the decision by the hearing examiner.

Higham appeals.

---

[5] An aggrieved party affected by the decision of the hearing examiner may file a request for reconsideration within seven working days of the date of the hearing examiner's written decision. AR at 6; PCC 1.22.130.

[6] Ch. 36.70C RCW.

ANALYSIS

Higham argues that (1) Pierce County is collaterally estopped from enforcing a 75-foot wetland buffer, (2) the 2003 Wetland Approval set the wetland buffer for the on-site and off-site wetlands at 37.5 feet, and (3) the 2004 Boundary Line Adjustment approved the construction of his pipe stem driveway. We review the decision to apply collateral estoppel de novo. *World Wide Video of Wash., Inc. v. City of Spokane*, 125 Wn. App. 289, 304, 103 P.3d 1265 (2005). And we review the decision of the hearing examiner under RCW 36.70C.130(1). We disagree that Pierce County is collaterally estopped or that the decision by the hearing examiner to deny the variance is incorrect or not supported by the record.

## I. COLLATERAL ESTOPPEL

Higham argues that Pierce County is collaterally estopped from imposing a 75-foot wetland buffer as to the on-site and off-site wetlands. We disagree.

Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties. *Olympic Tug & Barge, Inc. v. Wash. State Dep't of Revenue*, 163 Wn. App. 298, 302, 259 P.3d 338 (2011). The collateral estoppel doctrine promotes judicial economy. *Olympic Tug*, 163 Wn. App. at 302. Collateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding. *Olympic Tug*, 163 Wn. App. at 302-03.

The party seeking to apply the doctrine of collateral estoppel must establish each of the following elements:

> "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity

> with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied."

*World Wide Video*, 125 Wn. App. at 305 (quoting *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004)).

Higham argues that the 2003 Wetland Approval, which reduced the wetland buffer also applies to the 2011 driveway access. We disagree.

The 2003 Wetland Approval reduced the wetland buffer to 37.5 feet for only the on-site wetland and buffer. The 2003 Wetland Approval clearly states that "[t]hese conditions apply to the on-site wetland and buffer." AR at 84. The county did not address a reduction of the wetland buffer for the off-site wetland.

Further, the 2003 Wetland Approval reduced the wetland buffer to 37.5 feet as to only the existing structures on the site. The 2003 Wetland Approval clearly stated that "[a] new wetland review will be required for any change of use associated with any new proposed development activities or structures on the site" and that all construction must be completed within three years of the June 19, 2003, date of issue. AR at 84 (boldface omitted).

Higham's 2011 application for a wetland variance raised different issues, including the development of a single-family residence and the reduction of an off-site wetland buffer to accommodate the new pipe stem driveway. The 2003 Wetland Approval did not address any issues arising after June 19, 2006, or address any issues related to any additional structures on the property. Thus, we hold that Higham does not meet his burden of showing that the issues addressed in the 2003 Wetland Approval were identical to the issues before the hearing examiner in 2011.

We hold that Higham does not meet his burden of establishing that collateral estoppel applies because he fails to show that the issues are identical. Thus, we affirm the superior court's decision that collateral estoppel does not apply.

## II. WETLAND BUFFER VARIANCE

Higham argues that, even if collateral estoppel does not apply, the hearing examiner erred in denying his application for a wetland buffer variance because he met all four variance criteria. We disagree.

## A. STANDARD OF REVIEW

### 1. Review of Land Use Decisions

LUPA governs judicial review of Washington land use decisions. *Schlotfeldt v. Benton County*, 172 Wn. App. 888, 892, 292 P.3d 807 (2013). When reviewing a superior court's decision on a land use petition, we stand in the shoes of the superior court in its appellate capacity and we review the administrative decision on the record of the administrative tribunal, not of the superior court. *Schlotfeldt*, 172 Wn. App. at 893. "Local jurisdictions with expertise in land use decisions are afforded an appropriate level of deference in interpretations of law under LUPA." *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 412, 120 P.3d 56 (2005) (citing RCW 36.70C.130).

Under RCW 36.70C.130(a), (b), (c), and (d), Higham has the burden to establish that:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court; or

(d) The land use decision is a clearly erroneous application of the law to the facts;

2. Wetland Variance Criteria

"Wetlands" are areas "inundated or saturated by surface water or groundwater at a frequency and duration sufficient to support . . . a prevalence of vegetation typically adapted for life in saturated soil conditions." RCW 36.70A.030(21). Buffers around wetlands protect mainly the water quality and wildlife habitat functions of wetlands. *Yakima County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 168 Wn. App. 680, 694, 279 P.3d 434 (2012). The purpose of PCC 18E.30.010[7] is to

> avoid impacts arising from land development and other activities affecting wetlands, and to maintain and enhance the biological and physical functions and values of wetlands with respect to water quality maintenance, stormwater and floodwater storage and conveyance, fish and wildlife habitat, primary productivity, recreation, education, and historic and cultural preservation.

Under PCC 18E.20.060(D)(3)(a), the hearing examiner had the authority to grant a variance if all four variance criteria are met:

> 1. There are special circumstances applicable to the subject property or to the intended use such as shape, topography, location, or surroundings that do not apply generally to surrounding properties or that make it impossible to redesign the project to preclude the need for a variance;
>
> 2. The applicant has avoided impacts and provided mitigation to the maximum practical extent;
>
> 3. The buffer reduction proposed through the variance is limited to that necessary for the preservation and enjoyment of a substantial property right or use possessed by other similarly situated property, but which because of special circumstances is denied to the property in question; and
>
> 4. Granting the variance will not be materially detrimental to the public welfare or injurious to the property or improvement.

Suppl. CP at 90.

---

[7] PCC 18E.30.010 can be found at: http://www.codepublishing.com/WA/PierceCounty/#!/PierceCounty18E/PierceCounty18E30.html#18E.30.010

Higham argues that the hearing examiner erred in denying his variance under RCW 36.70C.130(1). We disagree.

B. RELIEF UNDER LUPA

1. Interpretation of the Law

Higham argues that the hearing examiner misinterpreted the law when he denied Higham's application for a variance because the 2003 Wetland Approval and 2004 Boundary Line Adjustment previously established a 37.5-foot wetland buffer on his property. We disagree.

Under RCW 36.70C.130(1)(a) and (b), we review questions of law de novo. *Cingular Wireless, L.L.C. v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

Although the county agreed in 2003 to reduce the wetland buffer to 37.5 feet for the pond expansion, the 2003 Wetland Approval was done only to resolve the 2003 permit violation and it expressly stated that "[t]he issuance of this wetland approval does not constitute approval of other proposed projects by the landowner." AR at 84. The 2003 Wetland Approval states that "[t]hese conditions apply to the on-site wetland and buffer." AR at 84. The 2003 Wetland Approval also stated that "[a] new wetland review will be required for any change of use associated with any new proposed development activities or structures on the site." AR at 84 (boldface omitted). Finally, the conditions clearly state, "All Construction Must Be Completed: within [three] years of [the June 19, 2003] date of issue." AR at 84.

In addition, the on-site wetland considered by the county in 2003 included only the natural and agricultural ponds on the northeast corner of the property. It did not include a reduction of the wetland buffer for the off-site wetland, which is located immediately to the south of Higham's

property and which was impacted by the pipe stem driveway which Higham constructed after the 2004 Boundary Line Adjustment.

The 2004 Boundary Line Adjustment stated that it "is not a guarantee that future permits will be granted for any structure or development within [the] lot." AR at 88. Although the 2004 Boundary Line Adjustment survey map labels the revised property line as a "driveway," Higham did not apply for permits or a wetland variance for the off-site wetland prior to the construction of the pipe stem driveway. AR at 89.

Higham's reliance on the 2003 Wetland Approval and the 2004 Boundary Line Adjustment is misplaced. We hold that Higham fails to meet his burden of establishing that the hearing examiner erroneously interpreted the law because the 2003 Wetland Approval and the 2004 Boundary Line Adjustment do not establish the wetland buffer for purposes of Higham's 2011 wetland variance application and that the hearing examiner correctly interpreted PCC 18E.20.060(D)(3).

2. Substantial Evidence

Higham argues that the hearing examiner's findings of fact are not supported by substantial evidence when viewed in light of the whole record.[8] Although Higham does not assign error to

---

[8] Higham assigns error to the hearing examiner's findings of fact 5, 6, 7, 9, 10, 11, and 12, he fails to provide any independent arguments on alleged errors in findings of fact 5, 9, 10, 11 or 12. RAP 10.3(a)(6) requires a party to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013). Thus, we decline to address the other assignments of error and only address the assignments of error for findings of fact 6 and 7. Unchallenged findings of fact are verities on appeal. *In re Marriage of Raskob*, 183 Wn. App. 503, 510, 334 P.3d 30 (2014). Although Higham does not assign error to finding of fact 13, he provides sufficient argument and thus, we address this issue.

15

finding of fact 13, he provides argument sufficient to preserve his assignment of error on finding of fact 13.

Under RCW 36.70C.130(1)(c), we review the findings of fact to determine whether they are supported by substantial evidence. *Cingular Wireless,* 131 Wn. App. at 768; RCW 7.16.120(5). Substantial evidence is evidence that would persuade a fair-minded person of the truth of the statement asserted. *Cingular Wireless*, 131 Wn. App. at 768. We consider all of the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority. *Cingular Wireless,* 131 Wn. App. at 768. We defer to the fact-finding authority regarding the credibility of witnesses and the weight of reasonable but competing inferences. *Freeburg v. City of Seattle*, 71 Wn. App. 367, 371-72, 859, P.2d 610 (1993).

a. Access to the Site

Higham argues that the hearing examiner's finding of fact 6 is not supported by substantial evidence. Finding of fact 6 states that Higham

> has a possessory interest in a [rectangular] shaped 3.56 acre site in a Mid County Community Plan area of Pierce County. Legal access to the site is provided via an easement from the southeast corner of the site southward to Chesney Road. Approximately 1.3 acres of the site is located outside of wetland and buffer areas. Currently there is a 924 square foot single-family mobile home on site. There are also two sheds west of the mobile home and an unpermitted second access in the southwest corner of the site.

AR at 32.

The county's staff report stated that no permits had been applied for or issued for the driveway. Higham testified that he believed that the county's approval of the 2004 Boundary Line Adjustment also meant that the county had approved construction of the new driveway. But the

16

2004 Boundary Line Adjustment stated that it was not a guarantee that future permits will be granted for any structure or development within the lot. Higham did not offer any evidence that he applied for or that Pierce County approved a permit to develop the driveway along the southwest corner of the site.

Thus, we hold substantial evidence supports the hearing examiner's finding of fact 6 that Higham had legal access to the site via a 30-foot easement from the southeast corner of the site and that he did not receive any permits to develop the driveway along the southwest corner of the site.

b. Driveway Construction

Higham argues that the hearing examiner's finding of fact 7 is not supported by substantial evidence. Finding of fact 7 states that

> [s]ometime between 2003 and 2005 the applicant constructed a second 690-foot long driveway from Chesney Road, through a pipe [stem] connection and all the way north along the west property line to an area where he proposes to construct a new single family home. Approximately 560 lineal feet of the second driveway is located within buffers of [off-site] wetlands. In addition, within the same time frame, the applicant constructed a dock type structure over the onsite wetland and buffer area. No permits have been applied for or issued for either the driveway or the dock. In 2006 the applicant commenced grading the site without a permit, a stop worker order was issued on January 26, 2006. Thereafter the applicant under took additional clearing and grading, although majority of additional work occurred outside of the wetland and buffer areas.

AR at 32.

As analyzed above, Higham relied only on his belief that the county's approval of the 2004 Boundary Line Adjustment also meant that the county had approved construction of the new driveway, despite the fact that the 2004 Boundary Line Adjustment stated that it was "not a guarantee that future permits will be granted for any structure or development within [the] lot."

17

AR at 88. Higham did not offer any evidence that he applied for or was approved for a permit to construct a driveway along the southwest corner of the site. The site development plan shows that the new driveway is located within the buffers of the off-site wetlands.

Thus, we hold that substantial evidence supports the hearing examiner's finding of fact 7 that Higham did not receive permits to construct the new driveway along the southwest corner and that the driveway is located within the buffers of the off-site wetlands.

c. Wetland Variance Criteria

Higham argues that the hearing examiner's finding of fact 13, that Higham fails to meet all four variance criteria, is not supported by substantial evidence. We disagree.

i. Special Circumstances

The special circumstances criteria addresses whether the property has any unique features. Suppl. CP at 90 (18E.20.060(D)(3)(a)(1)). Finding of fact 13.1 states that

> [t]here are no special circumstances applicable to this 3.5 acre parcel such as shape, topography, location of surroundings that make it impossible to redesign this project to preclude the need for a variance. In fact during the hearing, it was clearly demonstrated that proposed construction could take place without the need for a variance.

AR at 33; Suppl. CP at 98.

The site development plan shows that there is a significant amount of undeveloped land not impacted by the wetland buffer around both the on-site and off-site wetland areas. The old driveway in the southeast portion of the property had been used as access for years. The county's staff report states that the site includes approximately 1.3 acres of land outside of the wetland and buffer areas.

18

Higham does not provide any evidence to dispute that approximately 1.3 acres of land is available for the construction of a single-family residence outside of the wetland and buffer areas, or that any special topography or location of surroundings impede his ability to select a different location for the construction of a single-family residence.

Thus, we hold substantial evidence supports part one of the hearing examiner's findings of fact 13 that special circumstances do not exist on the site.

### ii. Avoided Impacts and Provided Mitigation

The hearing examiner next evaluated whether Higham had avoided any impacts to the wetlands and buffers and mitigated those impacts to the maximum extent practical and found that he did not meet this criteria under PCC 18E.20.060(D)(3)(a)(2). Finding of fact 13.2 states that

> [t]he applicant has not avoided impacts and provided mitigation to the maximum extent possible. In fact, he has proposed no mitigation and as previously stated the site contains sufficient area to build outside of the wetland and wetland buffer areas.

AR at 33; Suppl. CP at 98.

The county biologist testified before the hearing examiner that "additional development is in fact possible without the buffer reduction" and that "no mitigation whatsoever has been proposed." VRP at 6-7.

Higham relies on the 2003 Wetland Approval to support his argument that the 37.5-foot buffer requires no mitigation for the construction of a single-family residence. Higham states that both the old and the new access driveways intrude into the wetland buffer areas. He claims that the proposed 2011 wetland variance application offers the option with the least impact. The hearing examiner found that Higham offered no supporting evidence that his 2011 wetland variance application avoided impact and also found that Higham offered no evidence of any

19

mitigation. The hearing examiner also found that the site plan shows that the 1.3 acres of land upon which he may construct a single-family residence are outside the wetland and buffer areas.

Higham also argues that the county's health department's separate approval of the irrigation well also constituted an approval to locate a single-family residence in the northern portion of his property within the buffer area. However, Higham did not apply for, or receive, any permits by Pierce County to approve the construction of a single-family residence in that location, and he provides no other support for this argument.

As analyzed above, the hearing examiner correctly found that the 2003 Wetland Approval did not apply to the 2011 application for a wetland buffer variance, and we hold that substantial evidence supports part two of the hearing examiner's findings of fact 13, that Higham has not avoided impacts or provided mitigation.

### iii. Preservation and Enjoyment of Substantial Property Right

The hearing examiner considered whether a wetland buffer reduction was required for Higham to preserve and enjoy his property rights under PCC 18E.20.060(D)(3)(a)(3). Finding of fact 13.3 stated that "[a] buffer reduction is not necessary for the applicant to construct a single-family residence on this site." AR at 33.

Higham argued that there are no other alternatives to his site plan and the project could not be redesigned in a way that does not impact the buffer areas because the only other place on the site suitable for construction of a single-family residence is also the only place where the septic system would fit. Higham's biologist testified that "[a]pproximately 63 percent of this site is covered by wetlands and buffers." VRP at 24. The county biologist testified that alternatives to

the proposed site plan did exist which required no buffer variance. We hold that substantial evidence supports part three of the hearing examiner's finding of fact 13.

### iv. Not Materially Detrimental

The hearing examiner considered whether granting a variance would be detrimental to the public welfare or injurious to property under PCC 18E.20.060(D)(3)(a)(4). Higham argued that the county conceded that a wetland buffer reduction posed no direct hazard to the site or surrounding properties.

The hearing examiner stated in finding of fact 13.4 that granting a variance where the applicant failed to meet the strict application of the law would undermine the regulatory purposes and principles of zoning ordinances and land use comprehensive plans. We agree and we hold that substantial evidence supports part four of the hearing examiner's finding of fact 13.

3. Clearly Erroneous Application of the Law to the Facts

Higham argues that the hearing examiner erroneously applied the law to the facts when he discounted Higham's reliance on the 2003 Wetland Approval and the 2004 Boundary Line Adjustment. We disagree.

Under RCW 36.70C.130(1)(d), we review whether the decision by the hearings examiner was clearly erroneous by applying the law to the facts. *Cingular Wireless*, 131 Wn. App. at 768. Under the clearly erroneous standard, we determine whether we have a definite and firm conviction that a mistake has been committed. *Cingular Wireless*, 131 Wn. App. at 768.

As analyzed above, Pierce County was not bound by the 2003 Wetland Approval or the 2004 Boundary Line Adjustment. Thus, we hold that the hearing examiner did not erroneously apply the law to the facts. Therefore, we affirm the hearing examiner's decision to deny Higham's

application for a wetland buffer variance because Higham failed to meet all four of the variance criteria.

4. Unlawful Procedure

Higham argues that the hearing examiner engaged in unlawful procedure when he relied on inadmissible evidence contained in the county's staff report. Higham does not provide more than passing treatment and conclusory arguments to support this argument.

RAP 10.3(a)(6) requires a party to provide argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013). We do not consider conclusory arguments that are unsupported by citation to legal authority. *Brownfield*, 178 Wn. App. at 876.

The hearing examiner did not misinterpret the law; substantial evidence supports the findings of fact; the hearing examiner did not erroneously apply the law to the facts; and, the hearing examiner did not engage in unlawful procedure. Because Higham failed to meet all four variance criteria, the hearing examiner correctly denied his request for a wetland buffer variance, and we affirm.

III. ATTORNEY FEES AND COSTS

Pierce County requests an award of reasonable attorney fees and costs under RCW 4.84.370 and in accordance with RAP 18.1(a).

A prevailing party may recover attorney fees only if provided by statute, agreement, or equitable principles. *Tacoma Northpark, L.L.C. v. NW, L.L.C.*, 123 Wn. App. 73, 84, 96 P.3d 454

(2004); RAP 18.1(a). RCW 4.84.370 provides that reasonable attorney fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals to issue, condition, or deny a development permit involving a variance or similar land use approval or decision. Because RCW 4.84.370 authorizes fees and Pierce County is the prevailing party on appeal, we award Pierce County its reasonable attorney fees and costs on appeal under RCW 4.84.370 and under RAP 18.1(a).

## CONCLUSION

We affirm the hearing examiner's decision to deny the wetland buffer variance. We also affirm the superior court's decision that the doctrine of collateral estoppel does not apply and award Pierce County its reasonable attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.